```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

UNITED STATES OF AMERICA,

                    v.

JEROME CROSBY,
  WILLIAM PUTNAM, et al.,

                 Defendants.

**Hon. Hugh B. Scott**

08CR186A

**Report
&
Recommendation**

This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C) (Docket No. 8, Aug. 8, 2008). The instant matter before the Court is defendants' separate omnibus motions, some of which seek suppression of statements, suppression of evidence, motion to dismiss counts as to certain defendants (Docket Nos. **248 (William Putnam)**, 292 (Jerome Crosby), 256 (Patrick Perry), 250 (Wallace Peace), 161 (Sean Greathouse Williams), 246 (Prentis Hinton), 165, 282 (Victor Gaston, latter a joinder motion), 151 (Khaled Wiley[1]), 122 (Demetrius Degree), 298-99 (Woodie Johnson), 252, 290, 294 (Anthony Watkins, the latter a supplemental motion)[2]). Wallace Peace's suppression motion (to suppress his statements made

---

[1] Initially and incorrectly, see Docket No. 263, Tr. of July 29, 2008, at 2, called Khaled Hiley in the original Indictment.

[2] Some of the defendants have entered pleas following the filing of their respective motions. Defendant Amos Dean also moved for relief, Docket Nos. 239, 290, but later entered into a plea agreement, see United States v. Dean, No. 08CR212, Docket No. 24; as did Terry Izzard, Docket Nos. 183 (motion), 325 (plea agreement), Shawn Stevenson, Docket Nos. 152

during his arrest[3]) was considered in a separate Report and Recommendation (Docket No. 408), with objections pending before the District Court (Docket No. 432). Considered in this Report is so much of defendant William Putnam's omnibus motion seeking suppression of evidence (Docket No. 248).

Also pending (and addressed in a separate Order) are defendants' omnibus motions for discovery relief or joinder in codefendants' motions[4], including Putnam's motion for such relief. The Government filed an omnibus response (Docket No. 314) and leave was granted, nunc pro tunc, to allow filing of an excessive memorandum. Oral argument of these motions was heard on January 8, 2010, and evidentiary hearings were ordered for some defendants for February 8, 2010 (text minute entry, Jan. 8, 2010). Oral argument of Putnam's motion was held on September 14, 2010, and further briefing was authorized, to be completed by September 21, 2010 (Text minute entry Sept. 14, 2010).

## BACKGROUND

This case now involves 30 defendants (29 of whom are now before this Court) arising from a Drug Enforcement Administration and Buffalo Police Department investigation of alleged

---

(motion), 354 (plea agreement), Mario Vance, Docket Nos. 170, 171, 173 (motions), 353 (plea agreement), and Prentis Hinton, Docket Nos. 246 (motion), 440 (plea agreement).

[3]That Report did not consider Peace's motion to suppress statements obtained through wiretaps, which is the subject of Putnam's present motion and considered in this present Report.

[4]In addition to many of the motions cited above, Docket Nos. 257 (Perry), 249 (Peace), 182 (David Degree), 152 (Shawn Stevenson), 277, 286 (David Long, latter a joinder motion), 173 (Mario Vance), 159 (Christopher Adams), 297, 300-05 (Woodie Johnson), filed omnibus motions while other defendants filed motions joining in these, Docket Nos. 288 (Victor Peoples), 187 (Demetrius Johnson), 277 (Darryl Parker), 285 (Marcus Gaskin).

drug trafficking and related criminal activities of Wallace Peace, Patrick Perry, and Jerome Crosby in the spring of 2008.

The Government (see Docket No. 314, Gov't Response at 2) characterizes this case as arising from an extensive narcotics trafficking investigation, where the grand jury initially returned an 86-count Indictment (Docket No. 1) against 27 defendants. Later that Indictment was superseded by the present 109-count Indictment (Docket No. 190) against 30 defendants.[5] Most of the counts (Counts 2-92) in the Superseding Indictment are violations of 21 U.S.C. § 843(b), using a communications facility (a telephone) in causing and facilitating the commission of acts constituting possession with intent to distribute, distribution, and conspiracy to distribute cocaine and cocaine base, listed in the Indictment as a table of defendants, the dates and times of their alleged felonious conversations.

In April 2008, the Drug Enforcement Administration ("DEA") with the Buffalo Police Department ("BPD")investigated the criminal activities of Peace and his alleged criminal associates (Docket No. 314, Gov't Response at 3). In June and July of that year, Buffalo Police officers and DEA agents obtained New York State eavesdrop orders for telephones used by Peace, Patrick Perry, and Crosby, whom the Government contends are the lead defendants in this case (id. at 3, 2). The wiretap application for Peace was used to support the wiretap application for Putnam's telephone (see Docket No. 248, Def. Atty. Aff. ¶¶ 44-52). Then "over the course of approximately two (2) months, the DEA/BPD obtained authorization to intercept the wire communications on numerous different telephones and pagers used by defendant and his

---

[5]One defendant from the initial Indictment, James Jackson, had that Indictment dismissed as to him, Docket No. 3, and was not charged in the Superseding Indictment. Due to a conflict, another defendant, Antoine Callahan, appeared before Magistrate Judge Schroeder.

associates" (Docket No. 314, Gov't Response at 3). The Government alleges that Peace headed "an active cocaine distribution organization operating in and around Buffalo," that he handled day-to-day distribution as well as directing a group of youths to conduct home invasions and robberies of rival drug dealers (id. at 4). Peace also allegedly trafficked in weapons and contacted other drug suppliers, such as Patrick Perry (id. at 4-5). The investigation revealed that Patrick Perry had a supplier by the name of Jerome Crosby who had been traveling to New York City in June and July 2008 to acquire kilogram quantities of cocaine (id. at 5). Arrest and search warrants were executed on July 29, 2008 (id.).

Some of the defense motions were filed under the initial Indictment and were renewed when the Superseding Indictment was filed.

## DISCUSSION

I. Suppression Motions and Standing

As an initial matter, the Government objects to the joining defendants' blanket request to join the suppression motions absent showings of standing as to them (Docket No. 314, Gov't Response at 6). But during oral argument, the Government conceded that Putnam had standing.

II. Suppression of Physical Evidence

Putnam seeks to suppress evidence obtained pursuant to a search warrant for his (and his mother's) home at 29 Phyllis Avenue, Buffalo, New York, executed on July 28, 2008 (see Docket No. 248, Def. Atty. Aff. ¶¶ 62-68). The warrant affidavit from agent Salvatore Valvo identified these premises and Putnam's occupancy thereof from wiretaps (id. ¶¶ 64-66). Valvo was informed by a confidential informant that Putnam lived at this address and that Putnam was a drug customer of Wallace Peace (Valvo Aff. at 49-50; see Docket No. 248, Def. Atty. Aff.

4

¶¶ 65-66). Valvo concluded that Putnam was engaged in cocaine distribution and used 29 Phyllis as a location for distributing and stashing the cocaine (Valvo Aff.¶ 72e., at 51). Valvo recorded a transcribed intercepted conversation from June 19, 2008, between Putnam and Peace where Peace asked what address Putnam referred to and Putnam replied with 29 Phyllis, describing the car on the property (a blue BMW in the yard) and the color of the house (id. at 51-52). Putnam invites Peace to drop "it" in Putnam's BMW or to toss it onto Putnam's yard, with Peace stating his eagerness to get rid of the item as he did not want to "keep riding with it" (id. at 52, 53). Valvo concludes that in this conversation Putnam was making arrangements with Peace to obtain cocaine from Peace (id. at 53).

Putnam contends that these allegations were insufficient to establish probable cause to believe that any contraband would be found at 29 Phyllis to justify a search warrant (Docket No. 248, Def. Atty. Aff. ¶ 67).

The Government argues that this Court's earlier probable cause finding to authorize the search should enjoy great deference, see Illinois v. Gates, 462 U.S. 213, 236 (1983) (Docket No. 314, Gov't Response at 35-36). The Government relies upon the sufficiency of agent Valvo's affidavit and states that it was not a product or effort to deceive but was the product of a four-month investigation and wiretaps (id. at 36-37). Furthermore, the Government concludes that defendants have not shown the absence of detached neutrality in the issuance of these warrants to support their suppression, see United States v. Leon, 468 U.S. 897 (1984) (id. at 38-39).

This Court has considered Putnam's arguments and reviewed the averments in Valvo's affidavit relative to the search of 29 Phyllis and conclude that probable cause was established to search those premises. Putnam's motion to suppress, therefore, should be **denied**.

III.     Suppression of Electronic Eavesdropping Evidence

Putnam next seeks to suppress evidence obtained from wiretaps (and all evidence that is their fruit, including evidence subsequently obtained through the search warrant, based upon information obtained through the wiretap) because the Government failed to show the necessity for the wiretap warrants issued. Watkins argues that the wiretap application only gave generalized and conclusory statements that other investigative methods would fail. (No. 248, Putnam Atty. Aff. ¶¶ 43, 38-42, 44-52). He relies upon the Second Circuit's recent decision in United States v. Concepcion, 579 F.3d 214 (2d Cir. 2009), and United States v. Lilla, 699 F.2d 99 (2d Cir. 1983), which establish the standard for a sufficient statement of necessity to support a warrant application.

The Government counters that necessity for these wiretaps was established (Docket No. 314, Gov't Response, at 19, 20-22) from the extended investigation using confidential informants, including controlled buys, and an informant making consensual recorded calls (id. at 27). The Government argues that the wiretap orders are entitled to presumption of validity (id. at 25-26).

At issue here is whether the Government furnished a "full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear unlikely to succeed if tried or to be too dangerous," 18 U.S.C. § 2518(1)(c) (see Docket No. 248, Def. Atty. Aff. ¶ 38; Docket No. 314, Gov't Response at 19). This requirement, to

6

show that "investigative procedures less intrusive than a wiretap have been tried or are unlikely to succeed if tried," United States v. Lilla, 699 F.2d 99, 102 (2d Cir. 1983), is to ensure that a wiretap is not the investigative method of first resort without at least consideration of the viability of other, more conventional methods of investigation.

> "The purpose of the statutory requirements is not to preclude the use of electronic surveillance until after all other possible means of investigation have been exhausted by investigative agents; rather, they only require that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods."

United States v. Torres, 901 F.2d 205, 231 (2d Cir. 1990), cert. denied, 498 U.S. 906 (1990). "Merely because a normal investigative technique is theoretically possible, it does not follow that it is likely" to succeed. id. at 231-32 (citation omitted). (Docket No. 314, Gov't Response at 20). Furthermore, "the Government is not required to exhaust all conceivable investigative techniques before resorting to electronic surveillance," United States v. Concepcion, 579 F.3d 214, 218 (2d Cir. 2009). Title III "'only requires that the agents inform the authorizing judicial officer of the nature and progress of the investigation and of the difficulties inherent in the use of normal law enforcement methods,'" id. (quoting United States v. Diaz, 176 F.3d 52, 111 (2d Cir. 1999) (alteration and internal quotation marks omitted)). On this motion to suppress, this Court merely decides whether the facts asserted in the warrant application were "minimally adequate to support the determination made," Torres, supra, 901 F.2d at 231 (Docket No. 314, Gov't Response at 21 (emphasis in original eliminated)).

"Applying this commonsense approach, [the Second Circuit has] approved of wiretaps in complex and sprawling criminal cases involving large conspiracies," Concepcion, supra, 579 F.3d at 218 (citing, e.g., Torres, supra, 901 F.2d 205, 232). The conspiracy here involved

dozens of participants, but it is a simple conspiracy between alleged drug distributors and their customers. This Court has reviewed the Peace wiretap application pertinent to Putnam's motion and finds that it is minimally adequate to address the various other investigative techniques used and considered but dismissed as either premature or not applicable to justify the necessity of wiretaps of Peace's telephone. Putnam's motion to suppress the statement obtained from that wiretap should be **denied**.

IV. Necessity for Taint Hearing?

Putnam contends that, since the electronic surveillance was defective, he is entitled to a taint hearing to ascertain the full nature and extend of the electronic surveillance (Docket No. 248, Def. Atty. Aff. ¶¶ 60-61). The Government next argues that there is no need for a taint hearing because defendants have not shown that intercepts were illegal or improper (Docket No. 314, Gov't Response at 31). Given the recommended disposition above that necessity was established for this wiretap and hence no defect in it, Putnam is **not entitled to a taint hearing** and his motion for that relief should be **denied**.

## CONCLUSION

Based upon the above, it is recommended that so much of William Putnam's omnibus motion seeking suppression of statements arising from the Peace wiretap and suppression of evidence from the search warrant for Putnam's home (Docket No. 248) be **denied** as described above.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Cr. P. 59(b) (2) (effective December 1, 2009) and W.D.N.Y. Local Criminal Rule 58.2(a) (3).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Criminal Rule 58.2(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 58.2(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

                                                                   */s/ Hugh B. Scott*
                                                                     Hon. Hugh B. Scott
                                                    United States Magistrate Judge

Dated: Buffalo, New York
       November 3, 2010